UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 09-144-P-H |
| | ) | |
| JAMES RAYMOND | ) | |

GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT
EVIDENCE REGARDING DEFENDANT'S INTENT

The United States of America, by and through its attorneys, Paula D. Silsby,

United States Attorney for the District of Maine, and Craig M. Wolff, Assistant United

States Attorney, respectfully moves *in limine* for the admission of evidence that

demonstrates the Defendant's intent in committing the acts alleged in the pending

Indictment.

BACKGROUND

I.      The Charged Conduct

On September 23, 2009, a grand jury for the District of Maine returned a two-

count Indictment charging the Defendant with transporting a minor in interstate

commerce with the intent to engage in criminal sexual activity.

At the time of the crimes alleged in the Indictment, the Defendant was a music

teacher in the Auburn school system. The government anticipates that the evidence at

trial will show that on two occasions in the summer of 2007, the Defendant took "Jane

Doe,"[1] an eleven-year old girl, and her younger sister from Auburn to Canobie Lake

---

[1] On November 4, 2009, the Court issued a Protective Order prohibiting the parties
from disseminating any written documents containing the names of or any other

Park in Salem, New Hampshire and back. Both girls had been students of the

Defendant. No other adults or children went on either trip. During these trips, the

Defendant intentionally touched Jane Doe's breasts and buttocks. This touching

constituted criminal activity under both Maine and New Hampshire law.

The government anticipates that it will not be disputed at trial that the

Defendant transported Jane Doe and her sister to New Hampshire and back on the two

dates alleged in the Indictment.[2] The crux of this case will instead be whether the

Defendant transported Jane with improper intent, *i.e.*, the intent to engage in criminal

sexual activity. Evidence of the Defendant's intent is therefore particularly important.

## II.      The Defendant's Other Related Conduct

In the months prior to and following the charged conduct, the Defendant

engaged in activity that illuminates the intent underlying his trips with Jane Doe.

---

information concerning "Jane Doe" or possible minor witnesses in this case, except as
approved by the Court in advance.

[2] In addition to witness testimony confirming that the Defendant took Jane and her
sister to New Hampshire, documentary evidence also proves this point. The
Defendant's bank records show that he made purchases at Canobie Lake Park on the
relevant dates. And the Defendant's cellular telephone records show several calls from
his phone to Jane's house around each date, including calls made in the evening on both
days. These records corroborate witness testimony that the Defendant, Jane, and her
sister returned to Auburn in the late evening on both days.

The Defendant's cellular telephone records show that the Defendant placed a total
of eleven calls to Jane's home in July and August of 2007. The government intends to
introduce these records at trial, in part to corroborate witness testimony regarding the
dates of the trips, and in part to show the extent of the Defendant's contact with Jane
and her family in the summer of 2007. The government believes that this evidence is
inextricably linked with the charged offenses, and therefore not subject to Rule 404(b).

A.    **June 2007 School Chorus Trip**

On June 15, 2007, one month prior to the trip charged in Count One of the

Indictment, chorus groups from two Auburn schools went on a field trip to Canobie

Lake Park. The students, teachers, and chaperones traveled to the park on a bus. The

Defendant was one of the teachers who attended the trip.

On the drive back from the park, at least three students observed the Defendant

sitting in the very back of the bus with Jane Doe. One witness, Witness1, later told

Auburn Police officer Thomas Poulin that she observed the Defendant sitting in the

back of the bus with an unknown girl. Witness1 observed the Defendant rubbing the

girl's leg. She also observed the girl with her head on the Defendant's shoulder. Officer

Poulin showed Witness1 four pages of photos depicting students from the two schools,

and she identified another girl who had also observed the Defendant's actions. When

Officer Poulin asked how Witness1 knew that the other girl had observed the

Defendant, she replied that the girl had been sitting across from her, and when they saw

the Defendant's actions they both looked at each other and commented that it was

"weird." Witness 1 continued to look at the photographs, and identified Jane Doe as the

girl who had been sitting with the Defendant.

Poulin later interviewed Witness2, the girl Witness1 had identified as having

observed the Defendant's actions in the back of the bus. Witness2 told Poulin that she

had attended the chorus trip to Canobie Lake Park, and that on the way back from the

park she had observed the Defendant sitting in the back with Jane Doe. Witness2 stated

that she was sitting about two seats in front of them. Witness2 stated that "they sat together in the back and Mr. Raymond kept rubbing her leg and butt area." Witness2 further stated that she really noticed the incident because in her culture men did not put their hands all over girls.

Later in the investigation, investigators again met with Witness1 and her mother. During this meeting, Witness1 named another student who had observed the incident, Witness3. Officer Poulin and U.S. Immigration and Customs Enforcement (ICE) Special Agent Gary Moulton subsequently interviewed Witness3, whose description of the incident was similar to those of Witness1 and Witness2. Witness3 stated that the situation was uncomfortable and seemed weird. She also stated that she kept watching the Defendant because she wondered whether his actions toward Jane Doe were just a momentary event or something more deliberate. Witness3 stated that the Defendant sat with his arm around Jane Doe's waist for at least half the bus ride home.

Jane Doe was also interviewed by Officer Poulin about the chorus trip. She stated that the Defendant had made her sit in the back of the bus with him on the way back from the park. She stated that on the ride home he put his hand on her leg and began rubbing it. When Poulin asked her where on her leg the Defendant had touched her, she indicated that it had been on her mid-inner thigh. She further stated that she had asked the Defendant to stop and he did so, but that later he put his hand back on her leg and moved it toward her "butt." She stated that he also put his hand inside her shirt and

4

began rubbing her belly. She stated that she had not told anyone because she was afraid her mother would make a big deal of it and call everyone.[3]

> **B.      The Defendant's September 26, 2007 Interview**

In May of 2007, ICE agents received information indicating that the Defendant had made several purchases in 2005 and 2006 from known international child pornography websites. Agents decided to conduct a "knock and talk" interview of the Defendant.

On September 26, 2007, Special Agent Moulton, along with Special Agents Anthony Risk and Douglas McDonnell, interviewed the Defendant at his home. The Defendant stated that during 2005, he had a "rough time" and struggled with his interest in child pornography. The Defendant acknowledged purchasing a membership to a child pornography website in the summer of 2005. He stated that a short time later he realized that what he was doing was wrong and went to his pastor for help. He stated that he also "wiped" his computer hard drive approximately twenty times in an effort to eliminate any trace of what he had done. The Defendant claimed that he could not recall any other purchases in 2005. He recalled a purchase in 2006, but claimed that he made the purchase thinking it was an art website and stopped viewing the site when he realized its true nature.

---

[3] In a subsequent account of the incident, Jane Doe stated that the Defendant had touched her "close to my chest" under her shirt. She also stated that he touched her "private area" over her shorts.

The Defendant stated that he had an interest in young girls, without specifying an age group. He stated that he had struggled greatly with his problem, and understood that it was wrong. When asked whether he had any difficulties around students, he stated that he saw his students as human beings and did not have any sexual urges when around them.

### C.    The Defendant's October 24, 2007 Interview

On October 24, 2007, one of the Defendant's female students alleged that the Defendant had touched her inappropriately at school. Later the same day, the Defendant was interviewed by Auburn Detective Chad Syphers at the Auburn Police Department. Syphers told the Defendant that the interview was voluntary and that he was free to leave at any time. During the interview, which was videotaped, the Defendant made the following statements, among others, to Syphers:

- He had purchased memberships to online child pornography sites on three occasions in 2005.

- He had urges to touch young female students, but not older kids. He said that once in a while he felt the need to put his hand up a student's skirt or touch her buttocks.

- He stated that it was only in the past year or so that these urges started to happen, and that the urges did not happen very often.

- He said that ninety-five percent of the time he was satisfied by receiving a hug from a student, but that the other five percent of the time he needed something more.

- He said he liked it when kids in fourth, fifth, or sixth grade gave him hugs, but he was most attracted to kids in second or third grade.

- He said that the most he had ever done to a student was to put his hand up a girl's skirt, and that he had never touched a girl's "private parts."

- He stated that he had inappropriately touched between two and four kids, and provided their names. The names he provided did not include the child who had made the original complaint against him, however.

At the conclusion of the interview, the Defendant stated that he recognized that he had a problem with his desire at school to feel little girls' legs and sometimes their bottoms. He stated that he did not want things to progress any further than they had.

### D.    The Defendant's State Prosecution

On October 30, 2007, the Defendant was arrested for unlawful sexual touching in violation of Maine law.[4] The charge stemmed from the allegations of the first student who had complained of inappropriate touching. Several other former students came forward after the Defendant's arrest and claimed that he also had touched them. The Defendant was eventually charged in Androscoggin County Superior Court with two counts of unlawful sexual touching and three counts of assault. He was released on

---

[4] The Defendant's telephone records show that at 6:59 the morning after his arrest, after being held overnight, the Defendant called Jane Doe's home. The call lasted thirteen minutes. Jane's mother later told investigators that she spoke with the Defendant on the phone, and during the call he told her that he wanted to reassure her that nothing had happened with Jane or her sister during the two trips to Canobie Lake Park. He asked her whether the girls had said anything at all, and stated that the more statements he could get the better he would be. Jane's mother felt that the Defendant wanted a statement of support from her. She said that the girls had not said anything, and asked whether the Defendant had been fired. He responded that he had been suspended. Jane's mother then said she had to get off the phone and hung up. She said that she did not know what to say during the call and felt uncomfortable. The government intends to introduce evidence of this telephone call at trial.

conditions including a prohibition against having contact of any kind with any child under the age of 18.

On April 29, 2008, the Defendant was arrested for violating his state bail conditions by having non-incidental contact with children at the Auburn Walmart store on April 15, 2008. On May 1, 2008, Jane Doe's mother contacted Officer Poulin regarding an encounter that Jane allegedly had with the Defendant at the Hannaford supermarket in Auburn. Jane told investigators that she and a friend were at the supermarket when the Defendant entered the store, observed the girls and said hello as he passed them. Jane stated that it appeared to her that the Defendant followed them inside the store and when they exited.

Special Agent Moulton obtained surveillance footage from Hannaford for April 15, 2008, the day in question. The footage showed that the Defendant entered the store shortly after Jane Doe and her friend. As the Defendant entered, Jane and her friend were returning bottles. The Defendant looked twice, apparently in reaction to seeing Jane, and instead of continuing on his original path away from Jane, visibly hesitated multiple times and finally doubled back so he could walk by her. He passed within feet of her and made a low-handed waving gesture. It did not appear from the footage that the Defendant followed Jane through the store, however.

The Defendant went to trial in August of 2008. At the trial one girl testified that the Defendant slid his hand up her skirt during music class. A second girl testified that the Defendant had touched her buttocks. And a third girl testified that the Defendant

8

touched her leg from her ankle to her knee during a school talent show when he

dropped a piece of a camera on the floor and reached under a table to retrieve it. The

Defendant was convicted by a jury of all five counts.

## ARGUMENT

**I.      Evidence of the Defendant's Actions Is Admissible Under Rule 404(b)**

The Defendant's actions both before and after the charged conduct are evidence

of his intent to commit unlawful sexual activity during the two trips to New Hampshire

with Jane Doe and her sister. The Defendant's actions are appropriately analyzed under

Rule 404(b) of the Federal Rules of Evidence, which provides in relevant part:

> Evidence of other crimes, wrongs or acts is not admissible to prove the
> character of a person in order to show action in conformity therewith.  It
> may, however, be admissible for other purposes, such as proof of motive,
> opportunity, intent, preparation, plan, knowledge, identity, or absence of
> mistake or accident

Fed. R. Evid. 404(b). Under the rule, "evidence of prior bad acts is not admissible to

show the actor's bad character or propensity to commit crime." *United States v. Hicks*,

575 F.3d 130, 141 (1st Cir. 2009), *cert. denied*, 130 S. Ct. 647 (Nov. 16, 2009).[5] The First

Circuit has stated that Rule 404(b) "is one of inclusion which allows the introduction of

evidence of other crimes, wrongs, or acts unless the evidence tends to only prove

criminal disposition." *United States v. Fields*, 871 F.2d 188, 196 (1st Cir. 1989); *see also*

*United States v. Tutiven*, 40 F.3d 1, 5 (1st Cir. 1994) (Rule 404(b)'s "*absolute bar* is

---

[5] As the First Circuit noted in *United States v. Rodriguez*, 215 F.3d 110, 119 n.7 (1st Cir.
2000), "The common expression notwithstanding, Rule 404(b) does not just apply to
'prior' bad acts, but may include subsequent ones as well."

implicated … only if the challenged 'other crimes, wrongs, or acts' are relevant

*exclusively* to instigate an inference that the defendant is more likely to have acted in

similar fashion by committing the offense for which he is on trial"). "[W]here … the

other bad act evidence is introduced to show knowledge, motive, or intent, the Rule

404(b) exceptions to the prohibition against character evidence have been construed

broadly." *United States v. Flores Perez*, 849 F.2d 1, 4 (1st Cir. 1988).

Determining the admissibility of evidence under Rule 404(b) requires a two-

prong inquiry:

> First, in accordance with Rule 404(b), the evidence must have special
> relevance to an issue in the case such as [motive], intent or knowledge,
> and must not include bad character or propensity as a necessary link in
> the inferential chain … Second, consistent with Rule 403, the probative
> value of the evidence must not be substantially outweighed by the danger
> of unfair prejudice.

*United States v. Flemmi*, 402 F.3d 79, 91 (1st Cir. 2005) (quoting *United States v. McGuire*,

389 F.3d 225, 229 (1st Cir. 2004)). *See also United States v. Santana*, 342 F.3d 60, 67 (1st Cir.

2003); *United States v. Rodriguez*, 215 F.3d 110, 118 (1st Cir. 2000). "The showing of

special relevance is not particularly demanding." *United States v. Jimenez*, 507 F.3d 13, 17

(1st Cir. 2007). In addition, "[t]he other bad act need not be identical to the crime

charged so long as it is sufficiently similar to allow a juror to draw a reasonable

inference probative of knowledge or intent." *United States v. Landrau-Lopez*, 444 F.3d 19,

24 (1st Cir. 2006).

Courts in cases involving violations of 18 U.S.C. § 2423(a) have permitted the

admission of a variety of evidence under Rule 404(b) to prove the defendant's intent.

Often, the proffered evidence pertains to the defendant's similar conduct toward other minors. In *United States v. Davenport*, 149 F. App'x 536, 2005 WL 2476344 (7th Cir. 2005), for example, the district court permitted the government "to present evidence about sexually oriented drawings found in Davenport's home, links to sexually oriented web sites found on Davenport's computer, plus transcripts of Internet 'chats' that Davenport had conducted with a minor other than 'Julie,' the victim in this case." *Id.* at 538. On appeal, the defendant asserted that this evidence should have been excluded as improper propensity evidence, but the Seventh Circuit rejected this argument. The court noted that

> Davenport's defense was that he traveled from Arizona to Indiana in order to rescue Julie from abusive parents rather than to engage in sexual activity … That defense presented a question about his intent, and evidence that his thoughts turned to sex rather than rescue when it came to other minors helped the jury evaluate his intent.

*Id.; see also United States v. Bennett*, 258 F. App'x 671, 684 (5th Cir. 2007) (noting that, *inter alia*, erotic emails between defendant and other persons purporting to be teenage girls demonstrated defendant's intent to engage in criminal sexual activity with minor victim); *United States v. Long*, 328 F.3d 655, 661-62 (D.C. Cir. 2003) (upholding admission of testimony from two witnesses other than minor victims to prove defendant's intent); *United States v. Romero*, 189 F.3d 576, 588 (7th Cir. 1999) (upholding admission of audio recordings of conversations between defendant and other young boys; "these conversations show that he had a distinct sexual interest in young boys and had previously discussed acting on that interest"); *United States v. Johnson*, 132 F.3d 1279,

1282-83 (9th Cir. 1997) (affirming admission of testimony by two witnesses regarding

their sexual contact with defendant approximately thirteen years earlier, when

witnesses were teens).

In this case, the government is seeking to admit the following evidence of the

Defendant's actions under Rule 404(b):

- his contact with Jane Doe during the June 15, 2007 school chorus trip;

- his September 26, 2007 statements to Special Agent Moulton regarding his
  purchases of child pornography and his interest in young girls;

- his October 24, 2007 statements to Detective Syphers regarding his interest in
  young girls and his improper contact with them;

- his inappropriate contact with other students as detailed in his state trial; and

- his April 15, 2008 contact with Jane Doe at the Hannaford supermarket.

This evidence demonstrates the Defendant's improper intent in taking Jane Doe to New

Hampshire in July and August of 2007 and is therefore admissible under Rule 404(b).

With respect to the June 15, 2007 school chorus trip, the Defendant's

inappropriate contact with Jane Doe only one month before the first of the two charged

trips to New Hampshire is persuasive evidence of his intent. The Defendant will almost

assuredly claim at trial that his intentions in taking Jane to New Hampshire were

innocent, and that her claims of inappropriate sexual contact are either mistaken or

fabricated. His actions toward Jane on the school chorus trip powerfully refute such a

defense.

The Defendant's statements to Special Agent Moulton and Detective Syphers are also illuminating. In two separate interviews just months after his trips with Jane Doe, the Defendant admitted that he had purchased child pornography within the past year or two, that he had a sexual interest in young girls, and that he had acted on that interest by inappropriately touching several of his students. The Defendant's admissions provide direct evidence of his intent. As the Seventh Circuit noted in *Davenport, supra*, when a defendant "present[s] a question about his intent … evidence that his thoughts turned to sex rather than rescue when it came to other minors help[s] the jury evaluate his intent." 149 F. App'x at 538.

The Defendant's inappropriate touching of other students also demonstrates his intent. As noted above, three former students of the Defendant testified at his trial that he had touched their legs and buttocks at school. This testimony corroborates the Defendant's own admissions to Detective Syphers, and demonstrates his strong interest in young girls and his compulsion to touch them, even in a school setting.

Finally, the Defendant's actions at the Hannaford supermarket on April 15, 2008 also shed light on his intent. The surveillance footage from that day plainly shows the Defendant's desire to have contact with Jane, even after being prohibited from having contact with children as part of his state bail conditions.

## II.    The Proffered Evidence Is Also Admissible Under Rule 403

Applying the second prong of the 404(b) analysis, evidence of the Defendant's actions is also admissible under Rule 403. This rule provides in relevant part that

"[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. "Unfair prejudice" means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note.

The proffered evidence in this case passes muster under Rule 403. As noted above, this evidence has substantial probative value, illuminating the pivotal issue in this case. Any potential prejudice to the Defendant from the admission of the evidence is outweighed by its probative value. In addition, any potential prejudice can be mitigated by an appropriate cautionary instruction to the jury regarding the limited reason for the evidence's admission. *See United States v. Smith*, 292 F.3d 90, 100-01 (1st Cir. 2002) ("we note the careful limiting instruction given by the trial court … as to the limited purposes for which [404(b)] testimony … was to be considered. We have noted on many occasions the salutary effect of such instructions.").

## CONCLUSION

Evidence of the Defendant's actions is admissible under Rule 404(b). The government therefore respectfully requests that the Court grant its motion *in limine*.

Respectfully submitted,

PAULA D. SILSBY
United States Attorney


  /s/ Craig M. Wolff
Craig M. Wolff
Assistant United States Attorney


14

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2010, I electronically filed the foregoing

Government's Motion *In Limine* to Admit Evidence Regarding Defendant's Intent with

the Clerk of Court using the CM/ECF system which will send notification of such filing

to the following:

**Richard L. Hartley, Esq.**
**hartleylaw@gmail.com**

Paula D. Silsby
United States Attorney

   /s/ Craig M. Wolff
Assistant United States Attorney
United States Attorney's Office
100 Middle Street
Portland, Maine 04101
(207) 780-3257
craig.wolff@usdoj.gov

15